Case No. 25-20408

In The United States Court of Appeals
For the Fifth Circuit

Scott Sullivan; Frank DellaCroce; St. Charles Surgical Hospital, L.L.C.;
St. Charles Holdings, L.L.C.; Center for Breast Restorative Surgery,
L.L.C.; Sigma Delta Billing, L.L.C.,

Plaintiffs - Appellees

v.

Stewart A. Feldman; Feldman Law Firm, L.L.P.; Capstone Associated
Services (Wyoming), Limited Partnership; Capstone Associated Services,
Limited,

Defendants - Appellants

Feldman Law Firm, L.L.P.; Capstone Associated Services (Wyoming),
Limited Partnership; Capstone Associated Services, Limited; Capstone
Insurance Management, Limited,

Plaintiffs - Appellants

v.

Scott Sullivan; Frank DellaCroce; St. Charles Surgical Hospital, L.L.C.;
St. Charles Holdings, L.L.C.; Center for Breast Restorative Surgery,
L.L.C.; Sigma Delta Billing, L.L.C.,

Defendants - Appellees

Feldman Law Firm, L.L.P.; Capstone Associated Services (Wyoming), Limited Partnership; Capstone Associated Services, Limited; Capstone Insurance Management, Limited,

Plaintiffs - Appellants

v.

Scott Sullivan; Center for Breast Restorative Surgery, L.L.C.; Sigma Delta Billing, L.L.C.; Frank DellaCroce; St. Charles Surgical Hospital, L.L.C.; St. Charles Holdings, L.L.C.,

Defendants – Appellees

_____

On Appeal from the United States District Court
for the Southern District of Texas
No. 4:20-CV-2236
No. 4:21-CV-658
No. 4:21-CV-682
Hon. Lee H. Rosenthal

_____

**THE FELDMAN/CAPSTONE PARTIES'
BRIEF OF APPELLANTS**

_____

# CERTIFICATE OF INTERESTED PARTIES

***Defendants-Appellants***
***("The Feldman/Capstone Parties")***

Stewart A. Feldman
The Feldman Law Firm LLP
Capstone Associated Services (Wyoming), Limited Partnership
Capstone Associated Services, Ltd.
Capstone Insurance Management, Limited Partnership

***Counsel for Defendants-Appellants***

Raffi Melkonian
WRIGHT CLOSE & BARGER, LLP
One Riverway, Suite 2200
Houston, Texas 77056
(713) 572-4321
(713) 572-4320 (Facsimile)
melkonian@wrightclosebarger.com


E. John Gorman
Joseph F. Greenberg
THE FELDMAN LAW FIRM LLP
510 Bering Dr., Suite 500
Houston, TX 77057-1457
(713) 850-0700
(713) 850-8530 (Facsimile)
jgorman@feldlaw.com
jgreenberg@feldlaw.com


***Plaintiffs-Appellees***
***("The Doctors")***

Scott Sullivan
Frank DellaCroce

St. Charles Surgical Hospital, L.L.C.
St. Charles Holdings, L.L.C.
Center for Breast Restorative Surgery, L.L.C.
Sigma Delta Billing, L.L.C.

*Counsel for Plaintiffs-Appellees*

James M. Garner
Peter L. Hilbert Jr.
Thomas J. Madigan
Jeffrey D. Kessler
David A. Freedman
**SHER GARNER CAHILL RICHTER
KLEIN & HILBERT, L.L.C.**
909 Poydras Street, 28th Floor
New Orleans, Louisiana 70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
jgarner@shergarner.com


Mark Trachtenberg
State Bar No. 24008169
S.D. Tex. Bar No. 24584
**HAYNES BOONE, LLP**
1221 McKinney Street, Suite 4000
Houston, Texas 77010
Telephone: (713) 547-2528
Facsimile: (713) 236-5567
mark.trachtenberg@haynesboone.com


*/s/ Raffi Melkonian*
Raffi Melkonian

**STATEMENT REGARDING ORAL ARGUMENT**

This appeal calls for oral argument to explain how the district court violated the mandate from a previous appeal by making the same mistake twice. The Court's opinion mandated "arbitration to resolve any conflicting [arbitration] awards, with any new arbitrator determining whether and when earlier decisions or awards have preclusive effects." *Sullivan v. Feldman*, 132 F.4th 315, 334 (5th Cir. 2025) (cleaned up) ("*Sullivan I*"), *pet. filed*, No. 25-240 (U.S. Sept. 2, 2025). A post-remand arbitration is seeking to achieve this mandated objective. ROA.43205-06, 43208-09, 43223-24, 43228. Contrary to the mandate, however, the district court *sua sponte* rendered an "amended" judgment without waiting on this post-remand arbitration to resolve the *res judicata* effect of four conflicting arbitration awards.[1] *See Sullivan I*, 132 F.4th at 321, 324-26, 332-34.

Just like before, the amended judgment "purports to confirm all four awards, while entering an amount that reflects the single highest award" in favor of the Doctors—the "Jones Award." *Id.* at 326. The

---

[1] Mark Glasser issued his award first, followed by the other three delivered, in order, by Caroline Baker, Robert Kutcher, and Charles Jones. *See Sullivan I*, 132 F.4th at 324-25; ROA.5641, 5913, 5914, 6048, 6064, 6429, 6430, 6835.

5

district court thus issued the same "internally inconsistent judgment" *Sullivan I* disapproved. *See id.* at 324-26, 332-34. Despite this Court's clear instructions that a "new arbitrator" should decide the four awards' preclusive effects, nothing has changed in the district court. *See id.* at 334. The district court itself, and not a "new arbitrator," selected the Jones Award as the basis for granting relief in the amended judgment—the award that issued last in time among the four. *See id.* at 334.

"The first step" in applying the mandate rule turns on "figuring out what [the] mandate said." *Lake Eugenie Land & Dev., Inc. v. BP Explr'n & Prod., Inc. (In re Deepwater Horizon)*, 928 F.3d 394, 398 (5th Cir. 2019). Oral argument will aid the Court in carrying out this first step given the case's complex procedural history as it factors into the mandate rule's calculus.[2] The Feldman/Capstone Parties can also clarify how the district court's interpretation of the Mandate differs from their own.

The second step asks how the district court deviated from this Court's mandate, which expressly incorporates the opinion in *Sullivan I. Id.* at 400. Again, oral argument will aid this Court in understanding

---

[2] The panel that decided *Sullivan I* heard oral argument before issuing its published opinion. *See* ROA.43170 ("This cause was considered on the record on appeal and was argued by counsel.").

6

what the district court did wrong in acting on its own volition by basing

the amended judgment on the Jones Award and thereby undermining the

post-remand arbitration that will decide the *res judicata* effects of the

four awards. In adopting the Jones Award, moreover, the amended

judgment tops $100,000,000, including attorney's fees and interest. This

staggering sum should favor holding oral argument where the Doctors

recovered about $1.5 million in actual damages under two other

confirmed awards.

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PARTIES ............................................... 3

STATEMENT REGARDING ORAL ARGUMENT ................................. 5

TABLE OF CONTENTS ................................................................. 8

TABLE OF AUTHORITIES ............................................................ 10

INTRODUCTION ....................................................................... 14

JURISDICTIONAL STATEMENT ...................................................... 20

STATEMENT OF THE ISSUE ......................................................... 22

STATEMENT OF THE CASE .......................................................... 23

    A.    The Opinion Provides a Clear Roadmap on Remand ........... 23

    B.    The District Court Deviates from the Mandate that Calls for Arbitrating the Awards' Preclusive Effect ..................... 27

    C.    The Parties Arbitrate the Four Awards' Preclusive Effect on Remand in Accordance with the Mandate ...................... 30

    D.    The Feldman/Capstone Parties Complain that the Amended Judgment Contravenes the Mandate ................... 33

    E.    The District Court Denies the Feldman/Capstone Parties' Rule 59(e) Motion while Allowing the Post-Remand Arbitration to Go Forward ................................................. 35

SUMMARY OF THE ARGUMENT ...................................................... 37

STANDARD OF REVIEW ................................................................ 39

    A.    This Appeal Can Assail the Amended Judgment ................. 39

    B.    The Mandate Demands *De Novo* Review ............................ 39

    C.    *De Novo* Review Applies to the Rule 59(e) Motion ............... 40

ARGUMENT AND AUTHORITIES ...................................................... 41

  I. The District Court Violated The Mandate Rule ........................... 41

    A.    The District Court Must Follow this Court's Mandate ........ 41

B. The Amended Judgment Deviates from the Mandate by Reinstating the Jones Award that Made the Original Judgment Internally Inconsistent ........................................ 43

C. The Opinion Makes the Mandate's Scope Clear .................. 46

D. The Mandate Rule Includes the Opinion's Necessary Implication that Arbitration Must Precede Judgment ........ 50

E. An Award in the *Res Judicata* Arbitration Should Precede any New Judgment on Remand ............................................. 54

PRAYER FOR RELIEF ........................................................................ 58

CERTIFICATE OF SERVICE ............................................................. 60

ECF CERTIFICATION ....................................................................... 61

CERTIFICATE OF COMPLIANCE ..................................................... 61

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ackerman v. F.D.I.C.*,
  973 F.2d 1221 (5th Cir. 1992) ........................................................................20

*AcryliCon USA, LLC v. Silikal GMBH & Co.*,
  46 F.4th 1317 (11th Cir. 2022) ......................................................................25

*Aldous v. Darwin Nat'l Assurance Co.*,
  889 F.3d 798 (5th Cir. 2018) ..........................................................................31

*Alexander v. Wells Fargo Bank, N.A.*,
  867 F.3d 593 (5th Cir. 2017) ....................................................................20, 39

*Auto Parts Mfg. Miss., Inc. v. King Constr. of Houston, LLC*,
  782 F.3d 186 (5th Cir. 2015) ..........................................................................25

*Ball v. LeBlanc*,
  881 F.3d 346 (5th Cir. 2018) ..........................................................................49

*Briggs v. Penn. R.R*,
  334 U.S. 304 (1948) ..................................................................................42, 57

*Cascade Nat. Gas Corp. v. El Paso Nat. Gas, Corp.*, 386 U.S. 129 (1967) ..........................................................................39, 56

*Clements v. Steele*,
  786 F.2d 673 (5th Cir. 1986) .....................................................................49, 52

*Connor v. Stewart*,
  840 F. App'x 769 (5th Cir. 2020) ...................................................................40

*Cooper v. WestEnd Capital Mgmt., LLC*,
  832 F.3d 534 (5th Cir. 2016) ..........................................................................59

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990) .........................................................................................50

*Demahy v. Schwarz Pharma, Inc.,*
702 F.3d 177 (5th Cir. 2012) ...................................................... 33, 45

*Deustche Bank Nat'l Tr. Co. v. Burke,*
902 F.3d 548 (5th Cir. 2018) ............................................................49

*Ellis v. Amex Life Ins. Co.,*
211 F.3d 935 (5th Cir. 2000) ............................................................44

*Gegenheimer v. Galan,*
920 F.2d 307 (5th Cir. 1991) ...................................................... 51, 52

*Gen. Universal Sys., Inc. v. HAL, Inc.,*
500 F.3d 444 (5th Cir. 2007) ...................................................... 42, 47

*Guy v. Crown Equip. Corp.,*
394 F.3d 320 (5th Cir. 2004) ............................................................41

*Hansler v. Mainka (In re Hansler),*
988 F.2d 35 (5th Cir. 1993) ..............................................................44

*Harmon v. Collier,*
158 F.4th 595 (5th Cir. 2025) ...........................................................41

*In re Sanford Fork & Tool Co.,*
160 U.S. 247 (1895) ..................................................... 39, 42, 43, 56

*Lake Eugenie Land & Dev., Inc. v. BP Explr'n & Prod., Inc. (In re Deepwater Horizon),*
928 F.3d 394 (5th Cir. 2019) ................................................... 6, 39, 43

*Leroy v. City of Houston,*
906 F.2d 1068 (5th Cir. 1990) ..........................................................52

*LULAC, Dist. 19 v. City of Boerne,*
675 F.3d 433 (5th Cir. 2012) ............................................................57

*M. D. by Stukenberg v. Abbott,*
977 F.3d 479 (5th Cir. 2020) ..................................................... passim

*Marrese v. Am. Acad. of Orthopaedic Surgeons,*
470 U.S. 373 (1985) .........................................................................31

*Office of Thrift Supervision v. Felt (In re Felt),*
255 F.3d 220 (5th Cir. 2001) ............................................. 47, 51, 52, 53

*Osborne v. Belton,*
131 F.4th 262 (5th Cir. 2025) ....................................................... 41, 50

*Sullivan v. Feldman,*
132 F.4th 315 (5th Cir. 2025) ..................................................... passim

*Sullivan v. Feldman,*
No. 4:20-cv-02236, 2022 WL 17822451
(S.D. Tex. Dec. 20, 2022) ............................................................ 26, 27

*Templet v. HydroChem Inc.,*
367 F.3d 473 (5th Cir. 2004) ....................................................... 40, 41

*Tollett v. City of Kemah,*
285 F.3d 357 (5th Cir. 2002) ............................................................. 42

*United States v. Lee,*
358 F.3d 315 (5th Cir. 2004) ............................................................. 43

*W. Dow Hamm III Corp. v. Millennium Income Fund, LLC,*
237 S.W.3d 745 (Tex. App.—Houston [1st Dist.] 2007, no pet.)..........24

*Ward v. Santa Fe Indep. Sch. Dist.,*
393 F.3d 599 (5th Cir. 2004) ............................................................. 32

*Wiley v. State Farm Fire & Cas. Co.,*
585 F.3d 206 (5th Cir. 2009) ............................................................. 15

*Williams v. Thaler,*
602 F.3d 291 (5th Cir. 2010) ............................................................. 40

Statutes

9 U.S.C. § 13 .......................................................................................17

28 U.S.C. § 1291 .................................................................................20

28 U.S.C. § 1651 .................................................................................25

28 U.S.C. § 2106 ..................................................................55, 56

Rules

FED. R. APP. P. 3(c)(4) ........................................................32, 55

FED. R. APP. P. 4(a)(4)(A)(v) ...................................................20

FED. R. APP. P. 32(a)(5) ............................................................61

FED. R. APP. P. 32(a)(6) ............................................................61

FED. R. APP. P. 32(a)(7)(B) ......................................................61

FED. R. APP. P. 32(a)(7)(B)(i) ..................................................61

FED. R. CIV. P. 54(b)..................................................................20

FED. R. CIV. P. 59(e)......................................................... passim

## INTRODUCTION

This Court recently summed up and applied the mandate rule, a facet of the law-of-the-case doctrine, in four simple sentences:

> District courts do not have discretion to ignore mandates issued by this court. A previous panel of this court ordered the district court to begin implementing the permanent injunction in this case "without further changes." The district court made further changes anyway. We reverse and remand.

*M. D. by Stukenberg v. Abbott*, 977 F.3d 479, 481 (5th Cir. 2020).

Like *Stukenberg*, this Court's mandate in *Sullivan I* gave clear instructions when it "REMANDED to the District Court for further proceedings in accordance with the opinion of this Court." ROA.43170 ("Mandate"). In its opinion, the Court vacated a one-sided "stay order" that enjoined the Feldman/Capstone Parties from prosecuting an arbitration to resolve the preclusive effects of four arbitration awards issued by four different arbitrators arising out of the same business transaction ("Four Awards").[3] *Sullivan I*, 132 F.4th at 321, 332-34, 337.

The *Sullivan I* opinion decreed what should happen next on remand:

---

[3] The "temporary stay" vacated on appeal barred only the Feldman/Capstone Parties from initiating any further arbitrations. *Sullivan I*, 132 F.4th at 323-26; *see* ROA.5241-44. The Doctors remained free to begin more arbitrations.

- "further arbitrations between the parties [can proceed] so that the inconsistency among the [four arbitration] awards can be arbitrated."

- "We conclude that the district court misapplied a years-old stay order in an overbroad manner to prevent the parties from arbitrating the remaining two awards' irreconcilability."

- "arbitrators are authorized to determine whether and when earlier decisions or awards have preclusive effects." and

- "the Engagement Letter gave the Feldman and Capstone Parties the right to pursue arbitration to resolve any conflicting awards, with any new arbitrator determining whether and when earlier decisions or awards have preclusive effects."

*Id.* at 321, 326, 334 (cleaned up). On remand, the Feldman/Capstone Parties exercised their "right to pursue arbitration" to identify the award that carries preclusive effect. *See* ROA.43208-09, 43223.

Rather than wait for an arbitrator to decide which award should prevail under state-law preclusion principles,[4] the district court (again) picked the Jones Award. The district court *sua sponte* signed an amended partial final judgment on June 24, 2025 ("Amended Judgment") holding

---

[4] Texas law governs preclusion issues for two reasons. First, the parties selected "Texas substantive law" in their contract. *E.g.*, ROA.207. Second, Texas represents the forum state in this diversity case. *See Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (forum state's substantive law applies in diversity case).

> [t]he Feldman and Capstone Parties . . . jointly and severally liable [for] a total amount of $94,542,659.80, consisting of the principal amount of $70,336,224.60, plus attorneys' fees and costs incurred in the arbitration proceedings awarded by Judge Jones in the Jones Award in an amount of $18,348,294.60 and accrued prejudgment interest in the amount of $5,858,140.80, [and for] post-award interest on the total amount owed as of March 29, 2022, accruing at 5% after March 28, 2022 in the amount of $12,951.05 per diem thereafter until paid.

ROA.43203. Despite doubling down on the Jones Award that produced the "internally inconsistent judgment" the first time around, *Sullivan I*, 132 F.4th at 326, 332-34, the district court insisted that "[t]he Amended Partial Final Judgment followed the Fifth Circuit's mandate," ROA.43228.

Yet the Amended Judgment serves only to repeat the sins of the past. In *Sullivan I*, this Court denounced the judgment under review that granted the same relief against the Feldman/Capstone Parties as the Amended Judgment—picking the Jones Award over the other three awards the district court also confirmed under the Federal Arbitration Act ("FAA"). *Sullivan I*, 132 F.4th at 326, 332-34. Under the FAA, confirming any arbitration award gives it "the same force and effect, in all respects, as, and [makes it] subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been

16

rendered in an action in the court in which it is entered." 9 U.S.C. § 13. Like the "internally inconsistent judgment" in *Sullivan I*, the Amended Judgment confirms the Glasser, Baker, and Kutcher Awards, but gives them no effect under FAA Section 13. *See Sullivan I*, 132 F.4th at 332-34.

But what to do with four confirmed awards in the same action that all should qualify as judgments of the district court under FAA Section 13? The district court self-inflicted a "conundrum" the first time around by rendering a "judgment [that] only reflected the largest (Jones) award [and thereby] rendered meaningless the other three confirmed awards." *Id.* at 332-33. The Court's published opinion in *Sullivan I* ("Opinion") rejected this impermissible solution "that *unnecessarily* led to the internally inconsistent judgment now on appeal." *Id.* at 333 (emphasis added). This Court concluded that "the district court committed an error" it could have avoided when it "orally appl[ied] its March 22, 2021, stay order to prohibit further arbitration to resolve the conflicting confirmed awards." *Id.*

In its Amended Judgment, the district court erroneously reinstates the Jones Award and again brushes aside the other three this Court

"AFFIRM[ED]" on appeal. *Id.* at 321, 337. This decision produces the same "internally inconsistent judgment" as before, one which "render[s] the other three confirmed awards meaningless." *Id.* at 332-34. The Amended Judgment also short-circuits the Opinion's simple directive instructing the parties on remand "to pursue arbitration to resolve any conflicting awards, with any new arbitrator determining whether and when earlier decisions or awards have preclusive effects." *Id.* at 334 (cleaned up). But the district court offers no explanation for committing the same offense twice. *See* ROA.43228.

"It is black-letter law that a district court must comply with a mandate issued by an appellate court." *Stukenberg*, 977 F.3d at 482. The mandate rule respects the "judicial hierarchy" that exists here to avoid descending into "judicial anarchy." *Id.* at 483. The "appellate courts must make the final decision" when judges disagree, requiring the lower court to follow the superior court's decree. *Id.* This "strong medicine" keeps district courts from "ignor[ing] established rules of appellate procedure." *Id.*

Invoking the mandate rule, the Feldman/Capstone Parties ask this Court to vacate the erroneous Amended Judgment, reverse the order

denying their motion to alter or amend that judgment, remand the cause for proceedings consistent with the appeal's outcome, and direct the court below to comply with the Mandate in *Sullivan I*. To this end, the Court should instruct the district court on remand to refrain from rendering judgment that grants relief on any of the Four Awards until the *res judicata* arbitration determines their preclusive effects.

## JURISDICTIONAL STATEMENT

Jurisdiction lies over this appeal that challenges the Amended Judgment and the district court's order denying the Feldman/Capstone Parties' timely motion to alter or amend that judgment ("Rule 59(e) motion"). ROA.43202, 43207, 43228; *see* 28 U.S.C. § 1291; FED. R. CIV. P. 59(e). Applying Federal Rule of Civil Procedure 54(b), the district court certified the Amended Judgment as a "final judgment" for appeal because "no just reason for delay in the entry of this partial final judgment" exists. ROA.23204; *see* FED. R. CIV. P. 54(b); *Ackerman v. F.D.I.C.*, 973 F.2d 1221, 1224-25 (5th Cir. 1992) (setting forth the Rule 54(b) requirements for appealing a partial final judgment).

The district court rendered the Amended Judgment *sua sponte* on remand not long after the Mandate took effect. Once the district court denied their Rule 59(e) motion, the Feldman/Capstone Parties noticed their appeal within 30 days. ROA.43229 & n.2; *see* FED. R. APP. P. 4(a)(4)(A)(v). The notice of appeal vests this Court with appellate jurisdiction over both the Amended Judgment and the order denying the Rule 59(e) motion. *Alexander v. Wells Fargo Bank, N.A.*, 867 F.3d 593, 597 (5th Cir. 2017) ("notice of appeal from the denial of a timely Fed. R.

Civ. P. 59(e) motion brings up the underlying judgment for review"). The

appeal has ripened for review.

## STATEMENT OF THE ISSUE

1.     Whether the district court violated the mandate rule on remand by reinstating the same "internally inconsistent judgment" this Court rejected in *Sullivan I*, because granting relief on the Jones Award alone "rendered meaningless the other three confirmed awards." *Sullivan I*, 132 F.4th at 326, 332-34. Stated another way, did the district court err by rendering the Amended Judgment *sua sponte* without waiting for an arbitrator to decide, through post-remand arbitration, which confirmed arbitration award precludes the others on *res judicata* grounds, thereby eliminating irreconcilable conflicts among the Four Awards and enabling the prevailing award to serve as the basis for the judgment on remand?

**STATEMENT OF THE CASE**

The Opinion in *Sullivan I* accurately recounts the case's extensive factual background and complicated procedural history where the record now exceeds 54,000 pages. The Feldman/Capstone Parties will defer to the Opinion's statement of past facts to avoid repetition here while supplementing any necessary details. And the statement of the case in this brief will of course pick up on the facts where *Sullivan I* left off.

**A.    The Opinion Provides a Clear Roadmap on Remand**

This Court delivered its Opinion on March 11, 2025, which examined "the district court's judgment confirming four arbitration awards [under the FAA] resulting from four arbitrations between the same parties." *Sullivan I*, 132 F.4th at 321. This appeal concerns a key aspect of the Mandate that ultimately issued: "We VACATE and REMAND the district court's March 22, 2021, order staying further arbitrations between the parties." ROA.43170. That "temporary stay" enjoined the Feldman/Capstone Parties—and only the Feldman/Capstone Parties—from initiating any more arbitrations at least until the four ongoing ones concluded with final awards. *Sullivan I*, 132 F.4th at 333-34; *see* ROA.5241-44.

After the district court issued its partial final judgment on March 7, 2023, confirming the Four Awards ("Original Judgment"), the Feldman/Capstone Parties initiated an arbitration before Jay Madrid. *Sullivan I*, 132 F.4th at 325-26; *see* ROA.42524-60. The post-judgment demand "ask[ed] the Arbitrator to perform a straightforward task" that would determine whether the first of the Four Awards to issue "has a preclusive effect over three subsequent, inconsistent awards." ROA.42527. The Feldman/Capstone Parties advised Arbitrator Madrid that the Original Judgment confirmed all Four Awards but "left to an arbitrator the arbitrable issue of determining the first award's preclusive effect on all subsequently issued awards." ROA.42527.

As the Madrid arbitration demand pointed out, the district court's decision to let an arbitrator resolve an award's preclusive effect comports with Texas law. ROA.42527-28 (citing *W. Dow Hamm III Corp. v. Millennium Income Fund, LLC*, 237 S.W.3d 745, 753-57 (Tex. App.—Houston [1st Dist.] 2007, no pet.)). The district court agreed with this black-letter law, ruling that "arbitrators are authorized to determine whether and when earlier decisions or awards have preclusive effects." *Sullivan I*, 132 F.4th at 326, 334.

In response to the Madrid Arbitration, the Doctors moved the district court in part to "enjoin" the Feldman/Capstone Parties from seeking *res judicata* answers in arbitration. ROA.42516-20, 42522. The Doctors based this injunctive request on "two independent reasons"—a preliminary anti-arbitration injunction that predated the Original Judgment,[5] and "the All Writs Act, 28 U.S.C. § 1651." ROA.42518. Without a hearing, the district court "orally appli[ed] its March 22, 2021, stay order to prohibit further arbitration to resolve the conflicting confirmed awards." *Sullivan I*, 132 F.4th at 333. Despite agreeing with black-letter law that tasks arbitrators alone with deciding the preclusive effect of competing arbitration awards, the court below issued an "overbroad stay enjoining the [Feldman/Capstone Parties] from untangling the conflicting awards through further arbitration." *Id.*

This Court held that the district court "committed an error" in doing so, especially where "the parties disputed whether any of the other much

_____

[5] The Original Judgment neither granted a permanent anti-arbitration injunction against the Feldman/Capstone Parties nor carried forward the "temporary stay order" that prohibited the Feldman/Capstone Parties from initiating any new arbitrations. The district court's stay order therefore should have automatically dissolved on the Original Judgment's entry. *See Auto Parts Mfg. Miss., Inc. v. King Constr. of Houston, LLC*, 782 F.3d 186, 191 (5th Cir. 2015); *accord AcryliCon USA, LLC v. Silikal GMBH & Co.*, 46 F.4th 1317, 1324 (11th Cir. 2022).

lower arbitration awards has any res judicata effect on the Jones award." *Id.* According to the Opinion, the district court (1) acknowledged that the Feldman/Capstone Parties possessed "a contractual right to arbitrate," but (2) nevertheless barred them "from engaging in [that] legal conduct." *Id.* at 334. This "overbroad" stay failed to tailor its restrictions "narrowly . . . within the context of the substantive law at issue to address the specific relief sought." *Id.*

Despite stopping the Madrid Arbitration, "[t]he [district] court recognized that the Engagement Letter gave the Feldman and Capstone Parties the right to pursue arbitration to resolve any conflicting awards, with any new arbitrator determining whether and when earlier decisions or awards have preclusive effects." *Id.* (cleaned up). And the district court's oral decision to enjoin the Feldman/Capstone Parties from prosecuting the Madrid Arbitration conflicted with its earlier conclusion that "[t]o the extent the [four] awards were inconsistent, the issue of which award controls *was not a question for the court*, but rather for an arbitrator to decide." *Sullivan v. Feldman*, No. 4:20-cv-02236, 2022 WL 17822451, at *16 (S.D. Tex. Dec. 20, 2022) (emphasis added), *aff'd in part, rev'd in part*, 132 F.4th 315 (5th Cir. 2025).

This Court concluded that "[m]aintaining the stay at this juncture . . . thwarts the parties' bargain" to arbitrate the preclusive effect of the Four Awards that conflict. *Id.* In its Opinion, the Court "VACATE[D] and REMAND[ED] the district court's March 22, 2021, order staying further arbitrations between the parties." *Id.* at 337. The Mandate then "REMANDED [the cause] to the District Court for further proceedings in accordance with the opinion of this Court." ROA.43170.

**B.    The District Court Deviates from the Mandate that Calls for Arbitrating the Awards' Preclusive Effect**

After moving for rehearing *en banc* in *Sullivan I,* the Feldman/Capstone Parties "advise[d] the [district court that] the parties have been working toward a framework for having a single arbitrator resolve the arbitral issues the Fifth Circuit identified in its opinion." ROA.43165. The Feldman/Capstone Parties gave the district court such notice a month before this Court issued the Mandate and relinquished its jurisdiction over the appeal. ROA.43163-65. While the case remained on appeal, the district court therefore knew the parties were seeking to arbitrate the *res judicata* issues as the Opinion directed.

On May 30, 2025, the Mandate issued after the Court denied the Feldman/Capstone Parties' motion for rehearing *en banc* on April 30,

2025. ROA.43168. On June 24, 2025, the district court *sua sponte* entered the Amended Judgment based on the following "rulings":

> (1) December 20, 2022, Memorandum and Opinion (Docket Entry No. 153) confirming in part the March 29, 2022, arbitration award of Charles Jones (the "Jones Award")2 and the March 9, 2022, arbitration award of Mark Glasser; (2) January 11, 2023, Order (Docket Entry No. 154) confirming the March 22, 2022 award of Caroline Baker, and (3) the court's March 7, 2023, Order (Docket Entry No. 173) confirming the March 22, 2022 award and April 14, 2022 order on attorneys' fees and costs of Robert Kutcher.

ROA.43202-03; *see also* ROA.43208-09, 43212-13 & n.3.

The district court rendered this judgment without anyone requesting such relief on remand, without the parties briefing the mandate rule or law-of-the-case doctrine, without the parties providing any input on any award's preclusive effect, and without the parties having any chance to arbitrate the *res judicata* effect of any award confirmed by the district court and "AFFIRM[ED]" by this Court on appeal. ROA.43208-09. Yet the Mandate in *Sullivan I* "REMANDED [the cause] to the District Court for further proceedings *in accordance with the opinion of this Court.*" ROA.43170 (emphasis added).

In derogation of the Opinion, the district court went ahead and rendered the Amended Judgment anyway. ROA.43202. Despite

28

confirming all Four Awards, the Amended Judgment again holds the Feldman/Capstone Parties "jointly and severally liable" for $100,000,000+ under the Jones Award alone (adding attorney's fees and interest).[6] ROA.43202-03. Notably, neither this Court's Mandate nor the Opinion directs the district court to reinstate the Jones Award on remand to grant the Doctors this staggering amount.

Indeed, the Opinion says the opposite.

- We VACATE and REMAND the district court's March 22, 2021, order staying further arbitrations between the parties *so that the inconsistency among the awards can be arbitrated*.

- Next, we examine the district court's judgment that purports to confirm all four awards, while entering an amount that reflects the single highest award. We conclude that the district court *misapplied* a years-old stay order in an overbroad manner *to prevent the parties from arbitrating the remaining two awards'* [sic] *irreconcilability*.

*Sullivan I*, 132 F.4th at 321, 326 (emphasis added). The Opinion thus instructs the parties on remand to use arbitration to straighten out the Four Awards' "inconsistency" and "irreconcilability." *Id.* Nowhere does

---

[6] In compliance with the Mandate, the district court "confirms the Jones award except as it pertains to one of the defendants, Jeff Carlson." ROA.43202 n.2. This Court ruled that Carlson never agreed to arbitrate with the Doctors and no arbitration agreement otherwise bound him. *Sullivan I*, 132 F.4th at 321, 327, 334-37. Given Carlson's lack of consent, this Court reversed the Jones Award in part. *Id.* at 321, 337.

the Opinion authorize the district court to perform this task in place of an arbitrator. And nowhere does the Opinion direct the court below once again to prefer the Jones Award over the other three confirmed awards.

### C. The Parties Arbitrate the Four Awards' Preclusive Effect on Remand in Accordance with the Mandate

Minutes after the Court released its Opinion on March 11, 2025, the Doctors initiated an arbitration that mirrored the one where Jay Madrid would decide the Four Awards' preclusive effect. ROA.42899-900. The Doctors gave the district court immediate notice not only that the Opinion had issued, but also that this new arbitration had begun. ROA.42898-900.

> The door swings both ways: the right to arbitrate the effects of conflicting decisions is not limited to the Feldman and Capstone Parties. Accordingly, shortly after the Opinion's issuance, the Doctors commenced a new arbitration proceeding before Hon. Edwin Lombard, a retired judge who served with distinction on the Louisiana Fourth Circuit Court of Appeal.

ROA.42899.

No stay kept the Doctors from bringing this *res judicata* arbitration, which predated the Mandate by over two months. The Doctors advised the district court that they asked Lombard "to resolve conflicts between four arbitration awards between the parties." ROA.42899 n.9, 42934-35.

30

The Doctors stressed to the district court that, "[p]ursuant to the Fifth Circuit's guidance," they initiated the Lombard Arbitration to resolve "the inconsistency claims" plaguing the four conflicting awards. ROA.43016. According to the Doctors, this Court's "ruling" sanctioned the Lombard Arbitration as a vehicle for determining the *res judicata* issues identified by the Opinion: "The Doctors respectfully ask that the [district court] make clear at the April 24, 2025 hearing that *arbitrating* before Judge Lombard *consistent with the Fifth Circuit's ruling* is permissible." ROA.43017 (emphasis added).[7]

While telling the district court that the Lombard Arbitration should now decide a conflicting award's preclusive effect, the Doctors took a much different approach in a later filing below: "The Doctors reserve all rights regarding whether and how a subsequent arbitral ruling could possibly vitiate or undo [the Original Judgment], which was affirmed in all respects" on appeal. ROA.43016 n.4. The Doctors purported to reserve this right to pick the best outcome for themselves notwithstanding the

---

[7] The hearing originally set for April 24, 2025, and rescheduled for the next day, never took place because this Court retained jurisdiction over the cause until its Mandate issued on May 30, 2025. ROA.52, 43160-65 (citing *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379 (1985); *Aldous v. Darwin Nat'l Assurance Co.*, 889 F.3d 798, 799 (5th Cir. 2018)).

31

post-remand arbitration they initiated before Lombard: unless the arbitrator gives the Jones Award preclusive effect, the Doctors will reject any other result and will instead seek to collect under the Original (now Amended) Judgment.[8]

The Feldman/Capstone Parties objected to the Lombard Arbitration because the preexisting Madrid Arbitration would decide the same issue centering on the Four Awards' preclusive effect. ROA.43101-02. After repeatedly fighting the arbitration provision that requires any arbitral proceeding to conclude within four months, the Doctors now sought to enforce that limitation against Arbitrator Madrid to divest him of jurisdiction. *Compare, e.g.*, ROA.5015-18, 8319, 8338-40 *with* ROA.43020-21, 43098-100. Arbitrator Madrid agreed and relinquished his jurisdiction even though the Doctors derailed his arbitration for years by obtaining the stay order this Court vacated. ROA.43098-102.

---

[8] Despite the Doctors' statement to the contrary, this Court did not "affirm" the Original Judgment "in all respects as between the Feldman Parties" and themselves. ROA.43016 n.4. The Court reversed the Jones Award in part as to Jeff Carlson and vacated the stay order as it applied to the Madrid Arbitration and any further arbitration. *See Sullivan I*, 132 F.4th at 321, 337. The interlocutory stay order merged into the Original Judgment and became reviewable on appeal. *See id.* at 333-34 (citing FED. R. APP. P. 3(c)(4)). In reviewing the Original Judgment as a whole, *Ward v. Santa Fe Indep. Sch. Dist.*, 393 F.3d 599, 603-04 (5th Cir. 2004), this Court did not "affirm it in all respects" as the Doctors contended below.

The Lombard Arbitration faltered almost as quickly as it began. *See* ROA.43112, 43141, 43153-54. The Feldman/Capstone Parties and the Doctors instead agreed to "participat[e] in an arbitration before an agreed arbitrator to arbitrate the conflicts among the awards and other matters in dispute" and "to resolve the inconsistencies among the awards confirmed by the Fifth Circuit, as the Fifth Circuit itself contemplated." ROA.43208-09. This new arbitration began on May 9, 2025 ("Boyce Arbitration"), with the Feldman/Capstone Parties paying the Doctors $1,050,000 as consideration to satisfy the Glasser Award in full after offsets and credits.

## D. The Feldman/Capstone Parties Complain that the Amended Judgment Contravenes the Mandate

Because the parties were arbitrating the preclusion issues, the Feldman/Capstone Parties asked the district court in their Rule 59(e) motion[9] to "decline to issue any final judgment until that [ongoing] arbitration ends and the agreed arbitrator issues his final award." ROA.43209. The Rule 59(e) motion further argued the district court

---

[9] The Feldman/Capstone Parties filed their "motion for reconsideration under Rules 59 and 60" on July 22, 2025, within 28 days of the June 24, 2025, Amended Judgment, making it a Rule 59(e) motion. *See Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 & n.2 (5th Cir. 2012).

violated the mandate rule because (1) the "internally inconsistent" Amended Judgment once again grants relief only on the Jones Award, "render[ing] the other three confirmed awards meaningless," and (2) the Amended Judgment preempts the Boyce Arbitration that would determine the Four Awards' preclusive effects and thereby risk rendering the contractual right to arbitrate meaningless. ROA.43208-09, 43212-13; *see Sullivan I*, 132 F.4th at 332-33.

In opposing the Rule 59(e) motion, the Doctors agreed with the Feldman/Capstone Parties that the Mandate vacated the stay and "remand[ed] to allow further arbitration." ROA.43223.

> [The district court] effectuated the Fifth Circuit's mandate to allow the parties to engage in further arbitration—and the parties are in fact arbitrating consistent with that mandate. The parties are currently arbitrating the issues that the Fifth Circuit said may be arbitrated before the Honorable Bill Boyce, former appellate judge of the 14th Court of Appeals in Houston.

ROA.43223. According to the Doctors, the Mandate required post-remand arbitration to resolve the preclusive-effect issue: "Rather than ruling upon inconsistencies in the arbitration awards, the Fifth Circuit decided to vacate the March 2021 Stay Order to allow the parties to engage in further arbitration." ROA.43224. In accordance with the Opinion, the

parties agreed to conduct the Boyce Arbitration as the means to that end. ROA.43223.

### E. The District Court Denies the Feldman/Capstone Parties' Rule 59(e) Motion while Allowing the Post-Remand Arbitration to Go Forward

The district court denied the Feldman/Capstone Parties' Rule 59(e) motion without waiting for them to reply. ROA.43228. According to that four-sentence order, "[t]he Amended Partial Final Judgment followed the Fifth Circuit's mandate," such that the Amended Judgment "and the June 2025 Stay Order are consistent with the Fifth Circuit mandate and provide no basis for reconsideration." ROA.43228.[10] The district court offered no explanation or analysis in its terse order.

Yet in its "June 2025 Stay Order," the district court viewed the Mandate through another lens:

> The Fifth Circuit vacated the order staying further arbitrations, holding that this court had erred in applying the March 22, 2021, order to prohibit further arbitration to resolve the conflicts between the four confirmed arbitration awards: the Glasser award, the Baker award, the Kutcher award, and the Jones award.

---

[10] The June 24, 2025, Stay Order "administratively closes and stays this case pending the outcome of the Lombard arbitration," which the Doctors had already dismissed in May in favor of the Boyce Arbitration. *Compare* ROA.43205-06 *with* ROA.43228.

ROA.43206. The district court nevertheless granted relief on the Jones Award alone in the Amended Judgment instead of waiting on the outcome of the Boyce Arbitration. ROA.43202-04. In its order denying the Rule 59(e) motion, the district court purports to welcome the results of the Boyce Arbitration that will determine the preclusive effects of the Four Awards: "The Court looks forward to the result of the arbitration pending before The Honorable Bill Boyce." ROA.43228. Yet the Amended Judgment appears to displace the Boyce Award by basing relief on the Jones Award.

This appeal ensued after the district court denied the Rule 59(e) motion. ROA.43229. The timely notice of appeal filed by the Feldman/Capstone Parties assails the Amended Judgment and the order denying the Rule 59(e) motion. ROA.43229 & n.2.

## SUMMARY OF THE ARGUMENT

On remand, the district court must comply with both the letter and the spirit of the Mandate and do nothing else. The Mandate incorporates the *Sullivan I* Opinion, which rejects the same "internally inconsistent judgment" the district court *sua sponte* reinstated in the Amended Judgment as to the Feldman/Capstone Parties. Like the Original Judgment, the Amended Judgment reflects only the relief granted by the Jones Award despite confirming the other three awards under the FAA. The identical fatal flaw that plagued the Original Judgment thus infects the Amended Judgment. After committing this manifest error of law, the district court should have granted the Rule 59(e) motion but denied it.

In defining the Mandate, the Opinion calls for the parties on remand to arbitrate the Four Awards' preclusive effect and irreconcilable conflicts. With the district court's knowledge, this arbitral process began before the Mandate issued, predated the Amended Judgment, and culminated in the Boyce Arbitration by agreement of the parties. The post-remand arbitration should determine which one of the Four Awards would give rise to the relief granted by any new judgment rendered by the district court in compliance with the Mandate.

Instead of letting the Boyce Arbitration run its course, the district court reinstated the Jones Award in the Amended Judgment. The Amended Judgment prefers the Jones Award over any determination the arbitrator may make as to which confirmed award carries preclusive effect. Yet nowhere does the Mandate or the Opinion direct the district court to render such a judgment that revives the Jones Award while leaving the other three confirmed awards intact. Nor does the Mandate or the Opinion entitle the district court on remand to win the race to judgment ahead of the Boyce Award that should resolve *res judicata* and inconsistency issues framed by the Four Awards.

The mandate rule prohibits the district court from taking any action on remand that defeats the Mandate's purpose. The Opinion that gives voice to the Mandate condemned the "internally inconsistent judgment" under review in *Sullivan I* and concluded that arbitration should remedy this defect. Reading the Mandate as a whole, the district court should have awaited the arbitrator's *res judicata* decision before again rendering an "internally inconsistent judgment" on remand. In failing to do so, the district court committed a manifest error of law that it should have cured by granting the Rule 59(e) motion.

## STANDARD OF REVIEW

### A. This Appeal Can Assail the Amended Judgment

The Court is reviewing the Amended Judgment and the order denying the Feldman/Capstone Parties' Rule 59(e) motion. ROA.43233. Because the district court rendered the Amended Judgment *sua sponte*, no prior motion, briefing, or hearing asked for that relief. ROA.43208. Despite this procedural posture, the Feldman/Capstone Parties can challenge the Amended Judgment for violating the Mandate. *See Alexander*, 867 F.3d at 597 ("notice of appeal from denial of a timely Fed. R. Civ. P. 59(e) motion brings up the underlying judgment for review").

### B. The Mandate Demands *De Novo* Review

This appeal presents the proper remedy for the Court to enforce its Mandate where the district court "mistakes or misconstrues" it or fails to give it "full effect." *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255-56 (1895) (appeal remedies mandate error). As the one issuing the Mandate, this Court alone determines whether the district court complied with it. *Cascade Nat. Gas Corp. v. El Paso Nat. Gas Corp.*, 386 U.S. 129, 136 (1967). This narrow inquiry poses a question of law the Court reviews *de novo, Deepwater Horizon*, 928 F.3d at 398, focusing on the district court's

"authority" to go beyond the Mandate, *Connor v. Stewart*, 840 F. App'x 769, 771-72 (5th Cir. 2020). The district court lacks any discretion to disobey or ignore the Mandate. *Stukenberg*, 977 F.3d at 481.

## C.   *De Novo* Review Applies to the Rule 59(e) Motion

Through their Rule 59(e) motion, the Feldman/Capstone Parties sought to vacate the Amended Judgment for violating the mandate rule. ROA.43208-12; *see Williams v. Thaler*, 602 F.3d 291, 303 (5th Cir. 2010) ("Any motion that draws into question the correctness of a judgment is functionally a motion under Civil Rule 59(e), whatever its label."). The "Rule 59(e) motion calls into question the correctness of" the Amended Judgment entered on June 24, 2025. *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004). The Feldman/Capstone Parties based their Rule 59(e) motion in part on the ground that the district court committed "a manifest error of law" by deviating from the Mandate. ROA.43211.

The Feldman/Capstone Parties preserved error by moving to alter or amend the Amended Judgment under Rule 59(e) on July 22, 2025. ROA.43207-13. The Rule 59(e) motion represented the first opportunity for the Feldman/Capstone Parties to raise the mandate rule. The district

court had never violated the Mandate before, which this Court issued on May 30, 2025. ROA.52, 43168.

The Court tests whether the district court abused its discretion in denying the Rule 59(e) motion. *See Templet*, 367 F.3d 477. "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *Osborne v. Belton*, 131 F.4th 262, 269 (5th Cir. 2025). A manifest error of law signifies a "plain and indisputable" one "that amounts to a complete disregard of the controlling law." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Because the district court's Rule 59(e) ruling reconsiders a question of law in interpreting and applying the Mandate and its directives, the standard of review on appeal switches from abuse of discretion to *de novo*. *Harmon v. Collier*, 158 F.4th 595, 607 (5th Cir. 2025).

## ARGUMENT AND AUTHORITIES

## I. THE DISTRICT COURT VIOLATED THE MANDATE RULE

### A. The District Court Must Follow this Court's Mandate

The law-of-the-case doctrine prohibits the district court on remand (and this Court on subsequent appeal) from reexamining an issue of law

or fact the unanimous panel decided in *Sullivan I. Tollett v. City of Kemah*, 285 F.3d 357, 363 (5th Cir. 2002). As a corollary to this doctrine, the mandate rule specifically applies law-of-the-case principles to bind lower courts on remand. *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 453 (5th Cir. 2007). "Because the mandate rule is a corollary of the law of the case doctrine, it compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." *Id.* (cleaned up).

Under the mandate rule, "an inferior court has no power or authority to deviate from the mandate issued by an appellate court." *Briggs v. Penn. R.R.*, 334 U.S. 304, 306 (1948). The district court must "implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court." *HAL, Inc.*, 500 F.3d at 453. The mandate rule bound the court below on remand to consult and follow the Opinion in carrying out the Mandate. *Id.*; *see also Sanford Fork & Tool*, 160 U.S. at 256 (careful reading of opinion serves "to ascertain what was intended by [the] mandate").

In studying the Opinion, the district court must also consider "the circumstances it embraces." *HAL, Inc.*, 500 F.3d at 453. After all, "the

first step" in applying the mandate rule requires "figuring out what [the] mandate said." *Deepwater Horizon*, 928 F.3d at 398. The mandate rule thus required the district court on remand to effectuate the Mandate as defined by the Opinion and the circumstances it embraces, but to "do nothing else." *Id.*

The mandate rule strictly applied to bind the district court on remand where the Mandate directed "further proceedings in accordance with the opinion of this Court." ROA.43170; *see United States v. Lee*, 358 F.3d 315, 321-22 (5th Cir. 2004) (enforcing "strict mandate rule").

> The circuit court is bound by the [Supreme Court's] decree as the law of the case, and must carry it into execution according to the mandate. *That court cannot vary it*, or examine it for any other purpose than execution; *or give any other or further relief*; or review it, even for apparent error, *upon any matter decided on appeal*; *or intermeddle with it*, further than to settle so much as has been remanded.

*Sanford Fork & Tool*, 160 U.S. at 255 (emphasis added). These principles represent "black-letter law." *Stukenberg*, 977 F.3d at 481.

**B.     The Amended Judgment Deviates from the Mandate by Reinstating the Jones Award that Made the Original Judgment Internally Inconsistent**

Except for dropping Jeff Carlson as a jointly and severally liable defendant, the Amended Judgment revives the same "internally

inconsistent judgment" the Mandate "AFFIRMED IN PART, REVERSED IN PART, [and] VACATED IN PART." ROA.43170. The decretals in the Amended Judgment still adopt only the relief granted by the Jones Award despite confirming the other three awards issued first by Mark Glasser, second by Caroline Baker, and third by Robert Kutcher. *See* ROA.43202-04. Because the Jones Award issued last among the Four Awards, the district court contravened the Mandate by usurping the arbitrator's authority to resolve the awards' preclusive effect as directed by the Opinion.[11]

This Court ruled that the Original Judgment "only reflect[ing] the largest (Jones) award . . . rendered meaningless the other three confirmed awards" and created a "conundrum" under the FAA's framework. *Sullivan I*, 132 F.4th at 326, 332-33. Yet the Amended Judgment doubles down on this "conundrum" by picking the Jones Award again to the exclusion of all the other confirmed awards. *See id.* After

---

[11] The district court also misapplied conventional *res judicata* principles in preferring the Jones Award over the one that issued first in time (Glasser) where simultaneous arbitrations took place. *See, e.g., Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 937-38 (5th Cir. 2000) (applying the first-judgment rule to simultaneous suits involving the same parties). "The first judgment, *regardless of when the suits were filed*, is given preclusive effect." *Hansler v. Mainka (In re Hansler)*, 988 F.2d 35, 38 (5th Cir. 1993) (emphasis added); *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 14 & cmt. a.

making this same mistake twice, as the Feldman/Capstone Parties pointed out below, the district court failed to address this "conundrum" in denying the Rule 59(e) motion. *See* ROA.43208-09, 43228.

Instead, the district court insisted that the slight changes it made *sua sponte* to the Amended Judgment comport with the Mandate. *See* ROA.43228. Not so. The Opinion concludes the district court "committed an error" by orally applying its stay to the Madrid Arbitration, "an error that *unnecessarily led* to the internally inconsistent judgment now on appeal." *Sullivan I*, 132 F.4th at 332-33 (emphasis added). In using the word "unnecessarily," the Opinion makes clear the district court could have avoided the "error" that resulted in the "internally inconsistent judgment." *See Demahy*, 702 F.3d at 181 (*de novo* review assesses "whether a district court accurately interpreted and applied the directives of an appellate court's mandate").

According to the Opinion, the parties should have been able to conduct and complete the Madrid Arbitration in July 2023 to reconcile the conflicting awards, to determine the "preclusive effects" of "earlier decisions or awards," and "resolve" the "conundrum" created by elevating the Jones Award over the others to "render them meaningless." *See*

45

*Sullivan I*, 132 F.4th at 325-26, 332-34. Because the Amended Judgment continues to "order" relief granted only by the Jones Award, ROA.43203, the very same problems the Opinion identifies as plaguing the Original Judgment persist to this day.

This carryover frustrates and runs afoul of the Mandate as clarified by the Opinion: an arbitrator should first resolve conflicts in the Four Awards, such as whether "any of the other much lower arbitration awards has any res judicata effect on the Jones award." *See id.* at 332–34. Before the Mandate issued, the parties began that arbitral process on remand by agreeing to prosecute the Boyce Arbitration. The Amended Judgment, however, reverses the sequencing dictated by the Opinion whereby the Boyce Arbitration should make a *res judicata* determination first. This reverse sequencing imposed by the Amended Judgment exemplifies what the mandate rule forbids. The district court thus committed a manifest error of law that warrants relief under Rule 59(e).

### C. The Opinion Makes the Mandate's Scope Clear

The Doctors argued below that "[t]he only appellate mandate relating specifically to the [Original] Judgment was to remove the liability decree against Jeff Carlson." ROA.43222; *see also* ROA.43223.

46

But the mandate rule refutes the Doctors' attempt to narrow the Mandate's reach. "Because the mandate rule is a corollary of the law of the case doctrine, it compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues *expressly or impliedly decided by the appellate court.*" *Hal, Inc.*, 500 F.3d at 453 (emphasis added).

While "expressly" deciding Carlson's rights and liability, the Opinion also resolves several other issues, either directly or "by necessary implication." *See Office of Thrift Supervision v. Felt (In re Felt)*, 255 F.3d 220, 225-26 (5th Cir. 2001) (citing cases applying the necessary-implication rule). One key issue turns on using the doctrine of *res judicata* to resolve all the inconsistencies in the Four Awards. In the Opinion, this Court expressly identifies this issue and specifies the means for resolving it through post-remand arbitration. *See Sullivan I*, 132 F.4th at 333 ("After the Partial Final Judgment was entered, the parties disputed whether any of the other much lower arbitration awards has any res judicata effect on the Jones award.").

*Sullivan I* makes clear the court below erred in by taking away the Feldman/Capstone Parties' contractual right to arbitrate the dispute over

47

the Glasser Award's preclusive effect *via* the Madrid Arbitration: "the district court committed an error that unnecessarily led to the internally inconsistent judgment now on appeal. Specifically, the district court erred in orally applying its March 22, 2021, stay order to prohibit further arbitration to resolve the conflicting confirmed awards." *Id.* at 332.

The Opinion points out that even the lower court "recognized that the Engagement Letter gave the Feldman and Capstone Parties the right to pursue arbitration to resolve any conflicting awards, *with any new arbitrator* 'determin[ing] whether and when earlier decisions or awards have preclusive effects.'" *Id.* at 334 (emphasis added). Quoting the district court again, the Court agreed in its Opinion that "arbitrators are authorized to determine whether and when earlier decisions or awards have preclusive effects." *Id.*

In the Amended Judgment, the district court once again confirms all four conflicting arbitration awards. ROA.43202-03. After confirming the Four Awards, the district court again picks only the Jones Award as the source for granting the Doctors relief. ROA.43202-04. The district court supposedly makes this decision "under these rulings" that confirmed all Four Awards. ROA.43203. The Amended Judgment states

48

no other basis for its decretals. In holding the Feldman/Capstone Parties "jointly and severally liable for the claims brought by the Class Members," moreover, the Amended Judgment again facially disregards the confirmed Glasser Award that denied class arbitration altogether. *See* ROA.43203.

The Original Judgment, which sidelined three confirmed awards, effectively denied arbitration as the means of resolving all the conflicts in the Four Awards. This result led not merely to inconsistent awards as the Doctors admitted below, *see* ROA.43223-24, but to "the internally inconsistent judgment now on appeal," *Sullivan I*, 132 F.4th at 332. The Amended Judgment continues down the same road this Court barricaded in the previous appeal. Because the Amended Judgment reinstates the same "internally inconsistent judgment," the district court erred again by failing to follow the Mandate. *See Stukenberg*, 977 F.3d at 481-83.

The mandate rule establishes controlling law that binds the district court. *Clements v. Steele*, 786 F.2d 673, 674-76 (5th Cir. 1986). Violating this rule, as the Amended Judgment does, gives rise to a manifest error of law. *See Deustche Bank Nat'l Tr. Co. v. Burke*, 902 F.3d 548, 549, 551-52 (5th Cir. 2018) (per curiam); *Ball v. LeBlanc*, 881 F.3d 346, 350-53 (5th

49

Cir. 2018). The district court, by definition, abused its discretion by basing the Amended Judgment (and denying the Rule 59(e) motion) on "an erroneous view of the law." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990); *see Osborne*, 131 F.4th at 269 (defining the standard).

### D. The Mandate Rule Includes the Opinion's Necessary Implication that Arbitration Must Precede Judgment

By remanding the case for further proceedings, the Mandate paved the way for the parties to arbitrate "whether any of the other much lower arbitration awards has any res judicata effect on the Jones award." *Sullivan I*, 132 F.4th at 333. Despite the Opinion's necessary implication that the *res judicata* arbitration *should precede* any judgment on remand, the district court defanged the mandate rule by concluding that the Amended Judgment "followed the Fifth Circuit's mandate." ROA.43228.

But what good does remanding the case for a *res judicata* arbitration do if the district court enters the same "internally inconsistent" judgment as before without waiting on the arbitrator to determine the Four Awards' preclusive effects? For example, the arbitrator may conclude the Jones Award lacks any preclusive effect, thereby preventing the Amended Judgment from relying, as it does, on that award to grant any relief. Nothing in the Opinion gives the district

50

court the right to usurp, undercut, preempt, or interfere with the arbitrator's authority to decide the awards' preclusive effects.

Yet the Amended Judgment and the order denying the Rule 59(e) motion ignore the necessary implications that flow from the Opinion as an integral part of the Mandate. *See, e.g., Felt*, 255 F.3d at 225-26; *Gegenheimer v. Galan*, 920 F.2d 307, 309-10 (5th Cir. 1991) (mandate captures issues decided "[b]y necessary implication"). On remand, the district court failed to consider and follow those necessary implications. In opposing the Rule 59(e) motion, even the Doctors acknowledged the Opinion's necessary, if not explicit, implications:

- The only portion of the Fifth Circuit mandate that related to [the district court's] March 2021 Stay Order was to vacate it and to remand to allow further arbitration.

- The March 2021 Stay Order was "no longer viable to prevent the parties, if they so choose, from exercising their contractual right to engage in further arbitration."

- In doing so, the [district court] effectuated the Fifth Circuit's mandate to allow the parties to engage in further arbitration—and the parties are in fact arbitrating consistent with that mandate.

- The parties are currently arbitrating the issues that the Fifth Circuit said may be arbitrated before the Honorable Bill Boyce, former appellate judge of the 14th Court of Appeals in Houston.

- Rather than ruling upon inconsistencies in the arbitration awards, the Fifth Circuit decided to vacate the March 2021 Stay Order to allow the parties to engage in further arbitration.

- This Court considered the Fifth Circuit's holding and properly implemented its mandate: the Court removed Mr. Carlson from its judgment and issued the June 2025 Stay Order to allow for additional arbitration as mandated by the Fifth Circuit.

ROA.43222-24 (omitting citations).

Under this facet of the mandate rule, "those matters that were fully briefed to the appellate court and were necessary predicates to the ability to address the issue or issues specifically discussed are deemed to have been decided tacitly or implicitly, and their disposition is law of the case." *Felt*, 255 F.3d at 225. The Opinion foresees arbitration to resolve not only inconsistencies among the conflicting confirmed awards, but also the *res judicata* effect of an earlier award. This Court's precedent teaches that such directives, though communicated by necessary implication, suffice on remand to inform the Mandate. *See id.* at 225-26; *Gegenheimer*, 920 F.2d at 309-10; *Leroy v. City of Houston*, 906 F.2d 1068, 1076-77 (5th Cir. 1990); *Clements*, 786 F.2d at 674-76.

In *Sullivan I*, the parties briefed *res judicata* as the correct vehicle for addressing and resolving the irreconcilable conflicts that mar the Four Awards. The Feldman/Capstone Parties advised this Court that they "have sought to resolve some disputes between the arbitrators by arbitrating as the district court itself suggested. Such a procedure could have reduced the contradictions inherent in the district court's judgment." ECF Doc. # 124 in Case No. 23-20140 at 84. The Doctors countered that these "proposed solutions to resolve any inconsistencies are unworkable and unviable." ECF Doc. # 173 in Case No. 23-20140 at 74. Given the full briefing in *Sullivan I* that served as a "necessary predicate" for this Court's decision to vacate the prior stay order, the mandate rule requires compliance with the results of the previous appeal. *Felt*, 255 F.3d at 225.

But the Doctors went further in their brief of appellees in *Sullivan I* to make the very point the Feldman/Capstone Parties raised in their Rule 59(e) motion: that the district court lacks the judicial power to decide which conflicting award to pick as the basis for granting relief to the parties in a partial final judgment.

> And the notion that the district court could "resolve the inconsistency before confirming any result," FCP Br.72—

presumably by acting as a quasi-appellate court reviewing the merits of the arbitrators' decisions—would violate all conceptions of a district court's limited role in confirming or vacating arbitration awards.

ECF Doc. # 173 in Case No. 23-20140 at 74. The Doctors' own argument on appeal in *Sullivan I* thus refutes the position they took below in opposing the Rule 59(e) motion.

**E. An Award in the *Res Judicata* Arbitration Should Precede any New Judgment on Remand**

The Opinion calls for "further arbitrations" to resolve the inconsistencies in the Four Awards. "We VACATE and REMAND the district court's March 22, 2021, order staying further arbitrations between the parties so that the inconsistency among the awards can be arbitrated." *Sullivan I*, 132 F.4th at 321. And, as the Doctors admit, the parties are doing exactly that—"arbitrating the issues that the Fifth Circuit said may be arbitrated before the Honorable Bill Boyce, former appellate judge of the 14th Court of Appeals in Houston." ROA.43223.

If, as the Doctors argued below in opposing the Rule 59(e) motion, "[t]he only appellate mandate relating specifically to the Partial Final Judgment was to remove the liability decree against Jeff Carlson," there would be no need for any "further arbitrations" to arbitrate the

"inconsistency among the awards." ROA.43222. If the Doctors were correct, this Court simply could have reversed the part of the Jones Award that pertained to Carlson and affirmed the remainder of the Original Judgment. *See* 28 U.S.C. § 2106 (codifying appellate court's powers to decide case).

But this Court also took jurisdiction over the March 2021 stay order because it merged into the Original Judgment the Feldman/Capstone Parties appealed. *Sullivan I*, 132 F.4th at 333 (citing FED. R. APP. P. 3(c)(4)). After addressing the merits of that ruling, the Court vacated the stay order and remanded the cause for further proceedings in accordance with the Opinion that calls for arbitrating (1) the awards' "preclusive effects" and (2) the issue of *res judicata. Id.* at 321, 332-34, 337. The Opinion's necessary implication mandated the district court to wait until a "new arbitrator" issues a final award in the *res judicata* arbitration before rendering a new partial final judgment that impermissibly prefers one award over the others. *See id.* at 332-34.

In trying to limit the Mandate's scope below, the Doctors contended that "[t]he Fifth Circuit did not tell this Court to vacate the Partial Final Judgment, as the Feldman Parties wrongly request in their motion."

ROA.43224. But this argument misstates the Rule 59(e) motion, which never asserts that the Opinion "tells [the district court] to vacate the Partial Final Judgment" (or any other judgment). In addition, the Rule 59(e) motion targeted only the Amended Judgment, not the Original Judgment—"the Partial Final Judgment" referenced below by the Doctors. *E.g.*, ROA.43208-09, 43215-16.

Nor does the Doctors' argument about what this Court in *Sullivan I* failed to "tell" the district court to do on remand hold any water. While "[t]he Fifth Circuit did not tell this Court to vacate the Partial Final Judgment," ROA.43224, the converse is equally true. This Court never directed the district court to render a new judgment once again adopting the Jones Award, especially after characterizing the Original Judgment that did so as "internally inconsistent." *See Sullivan I*, 132 F.4th at 332-33. This Court easily could have rendered judgment that the Doctors recover under the Jones Award if that relief were warranted. *See* 28 U.S.C. § 2106.

But this Court alone, not the Doctors, interprets the Mandate in this appeal. *See Cascade Nat. Gas Corp.*, 386 U.S. at 136; *Sanford Fork & Tool*, 160 U.S. at 256. And in the face of the Boyce Arbitration, the

Mandate makes no provision for reinstating the relief granted by the Original Judgment that selectively reflects the Jones Award. *See Briggs*, 334 U.S. at 305-07 ("The latter court's mandate made no provision for such interest and the trial court had no power to enter judgment for an amount different than directed."). All signs in the Opinion instead point to the contrary by castigating the "internally inconsistent judgment." Nor did the Doctors move to modify the Mandate to ask this Court to render judgment granting them relief solely under the Jones Award, thereby waiving this position. *See id.*; *LULAC, Dist. 19 v. City of Boerne*, 675 F.3d 433, 439 (5th Cir. 2012); 5TH CIR. LOC. R. 41.2.

In the Opinion, the Court stressed the need for arbitration to resolve the "res judicata effect" that may attach to "any of the other much lower arbitration awards." *Sullivan I*, 132 F.4th at 333-34. This edict places the district court's conclusion in the Amended Judgment "that there is no just reason for delay in the entry of this partial final judgment" in tension with this Court's Opinion that defines the Mandate. *See* ROA.43204. At the time the Amended Judgment issued, a just reason for delay existed to allow a *res judicata* arbitration to take place. By necessary implication, the district court misconstrued the Mandate by

preemptively rendering the Amended Judgment before the Boyce Arbitration could resolve the *res judicata* issues identified by the Opinion and by the parties on remand. This Court should therefore reverse and remand. *See Stukenberg*, 977 F.3d at 481-83.

## PRAYER FOR RELIEF

The Mandate in *Sullivan I* addressed a specific problem and set forth a specific remedy: an arbitrator must first resolve the preclusive effects of the Four Awards on remand before the district court could issue a new judgment. But the reverse happened after the Boyce Arbitration began whereby the parties sought to resolve the *res judicata* issues in accordance with the *Sullivan I* Opinion. Deviating from the Mandate, the district court rendered the Amended Judgment that based relief on the Jones Award alone and thereby revived the "internally inconsistent judgment" *Sullivan I* disapproved. This judicial fiat replaces the arbitral solution compelled by the Opinion and thus violates the mandate rule.

By rendering the Amended Judgment without waiting for the Boyce Award, the district court thickens the morass this Court sought to fix with its Opinion that calls for post-remand arbitration. Boyce will deliver his *res judicata* award, which the district court should confirm under the

58

FAA's "extraordinarily narrow" and "exceedingly deferential" standard for judicial review. *Cooper v. WestEnd Capital Mgmt., LLC*, 832 F.3d 534, 544 (5th Cir. 2016). FAA Section 13 then turns that confirmed award into a judgment of the court for all purposes. Unless Boyce gives the Jones Award preclusive effect, two conflicting judgments will exist where only one can. The mandate rule solves this unnecessary complication that should never arise—in other words, preventing the case from descending into the "judicial anarchy" the Court warned about in *Stukenberg. See* 977 F.3d at 483.

Invoking the mandate rule, the Feldman/Capstone Parties ask this Court to vacate the erroneous Amended Judgment, reverse the order denying their motion to alter or amend that judgment, remand the cause for proceedings consistent with the appeal's outcome, and direct the court below to comply with the Mandate in *Sullivan I*. To this end, the Court should instruct the district court on remand to refrain from rendering judgment that grants relief on any of the Four Awards until the *res judicata* arbitration determines their preclusive effects.

Respectfully submitted,

*/s/ Raffi Melkonian*

| | |
|---|---|
| **THE FELDMAN LAW FIRM LLP** | **WRIGHT CLOSE & BARGER, LLP** |
| E. John Gorman | Raffi Melkonian |
| *jgorman@feldlaw.com* | *melonian@wrightclosebarger.com* |
| Joseph F. Greenberg | One Riverway, Suite 2200 |
| *jgreenberg@feldlaw.com* | Houston, Texas 77056 |
| 510 Bering Dr., Suite 500 | T: (713) 572-4321 |
| Houston, TX 77057-1457 | F: (713) 572-4320 |
| T: (713) 850-0700 | |
| F: (713) 850-8530 | **Attorneys for Appellants Stewart A. Feldman, The Feldman Law Firm LLP; Capstone Associated Services (Wyoming), Limited Partnership; Capstone Associated Services, Limited; and Capstone Insurance Management, Limited** |
| **Attorneys for Appellants Stewart A. Feldman and The Feldman Law Firm LLP** | |

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2026, I electronically transmitted the attached document to the Clerk of the Court of the 5th Circuit Court of Appeals using the ECF System of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Raffi Melkonian*
Raffi Melkonian

**ECF CERTIFICATION**

I hereby certify (i) the required privacy redactions have been made pursuant to 5TH CIR. R. 25.2.13; (ii) the electronic submission is an exact copy of the paper document pursuant to 5TH CIR. R. 25.2.1; (iii) the document has been scanned for viruses using Symantec Endpoint Protection active scan and is free of viruses; and (iv) the paper document will be maintained for three years after the mandate or order closing the case issues, pursuant to 5TH CIR. R. 25.2.9.

*/s/ Raffi Melkonian*
Raffi Melkonian


**CERTIFICATE OF COMPLIANCE**

1.    This statement complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because:

■    this statement contains **9,529** words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(i).

2.    This statement complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

■    this statement has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook font.

*/s/ Raffi Melkonian*
Raffi Melkonian